IGNACIO, BRUNA, JULIA, ANDRÉS, TOMÁS and ÚRSULA BURGOS Y RIVERA, Plaintiffs and Appellees, v. PETRONA MEDINA, ISAAC RIVERA, FRANCISCA ESPINOSA, CONSORCIA VÁZQUEZ and JOVA ORTIZ, Defendants and Appellants.

No. 3610.—Argued November 10, 1925.—Decided June 2, 1926.

González Fagundo & González, Jr., for the appellants. Arturo Aponte, Jr., for the appellees.

MR. JUSTICE HUTCHISON delivered the opinion of the court.

A statement of facts, findings and conclusions filed by the trial judge follows:

"In 1878 Victoriano de la Cruz sold to Francisco Rivera a rural property containing 26 *cuerdas* in the ward of Aguacate of Yabucoa, which property is described in the complaint. Rivera took possession of said property, but the corresponding deed was not executed. Francisco Rivera died and Victoriano de la Cruz conveyed directly to his heirs the title of the property by deed executed on March 29, 1879. The heirs of Francisco Rivera, as it appears from the said deed, were his children José and María Rivera Martínez and his granddaughter María Rivera del Toro, daughter of Tomás Rivera, deceased, and of Marcelina del Toro. The deed was made in the name of José Rivera Martínez, single, 30 years of age, and a resident of Yabucoa, as the representative of the heirs. He stated that he was authorized for that purpose. María Rivera Martínez was married to Tomás Burgos y Vega in Humacao on the 27th of December, 1876, and died on June 23, 1898. At her death she left her children Ignacio, known as Rosendo, Bruna, known as Tula, Julia, Andrés, Tomás and Ursula Burgos y Rivera, all mentioned in the complaint, and her husband Tomás Burgos y Vega. José Rivera Martínez died also before 'San Ciriaco' in the year 1899, without having married, and left as heirs his nephews and nieces above mentioned. María Rivera del Toro also (died) four years ago, having previously sold her rights and shares in said property to plaintiffs.

"The deed of conveyance executed by Victoriano de la Cruz in favor of the heirs of Francisco Rivera was recorded in the Registry of Property of Humacao in vol. 32 of Yabucoa, first inscription, dated February 3, 1915, with the curable defect of not mentioning the bounds of the property according to the cardinal points. In said deed the area, ward and municipality in which the property is situated were set forth. It was accompanied by a certificate of survey made by Manuel Disdier, a licensed surveyor, on the 12th of November, 1878, in which certificate, the boundaries and landmarks are specified. Such description is sufficient. *Coira* v. *Ortiz et al.,* 18 P.R.R. 211.

"The complaint in this case is against Petrona Medina, Isaac Rivera, Francisca Espinosa, Consorcia Vázquez and Jova Ortiz, and it alleges that defendants, without any title or right whatever, are in the possession and enjoyment of the said property and have refused to return it to plaintiffs. The property is valued at $700.

"The evidence shows that José Rivera Martínez who received on

March 29, 1879, the deed of sale as the representative of the heirs of Francisco Rivera, at whose request he did it, entered into the possession of the property, where his sister María Rivera Martínez and her niece María Rivera del Toro also resided. José Rivera Martínez lived in concubinage with Petrona Medina, one of the defendants. Plaintiffs, the children of María Rivera Martínez, occupy a small portion of the property.

"It has been shown that the plaintiffs are the children of María Rivera Martínez and nephews and nieces of José Rivera Martínez and are the sole heirs of both. The fact that the signature of the priest who signed a certified copy of the marriage certificate of María Rivera Martínez and Tomás Burgos has not been duly authenticated and that the certificates of birth of plaintiffs have not been presented, as well as the certificates of death of José Rivera Martínez and María Rivera del Toro, is of no great importance for the decision of this case, as the status of plaintiffs as heirs has been shown by the testimony. *Soriano et al.* v. *Rexach et al.*, 23 P.R.R. 531.

"We think that according to the evidence the plaintiffs have established the averments of their complaint to the effect that they are the true owners of the property in question, that this property is the one and only one belonging to them and is wrongfully in the possession of defendants, who have not shown, as alleged in their answer, that their possession of the property is in good faith and with just title. The action is not barred by limitation, as the required period of thirty years of possession has not elapsed.

"The complaint also prays for $1,000 as profits which plaintiffs have not received, but there is no proof in this regard. *Sánchez* v. *Hartzell et al.*, 26 P.R.R. 620."

■ The first question raised in the court below and insisted upon in the brief for appellants goes to the sufficiency of the complaint which counsel say should have identified each of the several parcels in possession of the respective defendants.

The complaint describes the land claimed by plaintiffs as follows:

"Rural property: A parcel of land composed of 26 *cuerdas* in the ward of Aguacate of the Municipality of Yabucoa, bounded on the north by Rosendo Burgos, now Conception Vázquez; on the south by the Humacao–Yabucoa road; on the east by Nicolás Rodríguez;

and on the west by Francisco Rivera and Manuel Perno, now Jesús Rivera and Aurelio Vargas.''

The seventh averment is:

''SEVENTH: That defendants Petrona Medina, Isaac Rivera, Francisca Espinosa, Consorcia Vázquez and Jova Ortiz, without any title or right whatever, are in possession of the property just described, and are wrongfully withholding the possession thereof, which they refuse to deliver to plaintiffs.''

In the absence of any intimation that any one of the defendants of any smaller group than the aggregate composed of all the defendants was in possession of any specific portion of the property, we fail to perceive, and the authorities cited by appellants do not disclose, any very tangible basis for the contention.

 The second proposition is that—

''The certificate issued by the priest of the Roman Catholic Church with regard to the death, marriage or birth of a person previous to the year 1885 tends to show the fact referred to in it; but as at the present time the Roman Catholic Church is a private institution it is necessary to authenticate and establish in some credible way the signature of the person who signed the certificate, because there is no statutory provision authorizing a judge to take judicial notice of the signature of a priest.''

During the trial the following incident occurred:

''Mr. Aponte: Your Honor, we offer in evidence the certificate of marriage of Tomás Burgos and María Rivera, issued by Juan José Lebrón Torres, priest and vicar of the Iglesia Parrochial de Humacao.

''Mr. González: Your Honor, this is a document which, although signed by Juan José Lebrón, is not authenticated.

''Mr. Aponte: If this were a document relative to the performance of a marriage ceremony, or if it referred to a baptismal ceremony, subsequent to 1885, which was the date on which the Civil Register Act went into effect in Porto Rico, then it would be proper for the opposite party to object to the evidence upon that ground; but your Honor can not take that into consideration inasmuch as the marriage took place in 1876; and, as a parochial archive was formerly what we might call the Civil Register, that is, prior to 1885, and we can almost say that it was just the same as the office of the

Secretary of Porto Rico, there is no doubt that the court can take judicial notice of this, because the priest is the keeper of the parochial archives. If this certificate were subsequent to 1885, then your Honor could decline to take it into consideration. Furthermore, this point has been decided by the Supreme-Court. What has not been decided is whether or not it is necessary to authenticate in an indubitable manner the signature of this custodian, when the Catholic Church is universally recognized even by international law.

"Mr. González: I am not going to discuss whether or not the marriages held prior to the year 1885, that is, previous to the Civil Register, may be proved by the Parochial Register. A marriage celebrated before 1885 is proved with the certificate of the priest or minister who performed the ceremony. I agree with my colleague as to that, because the union of Church and State then existed and then the archives of the Church were like those of the courts of first instance. But my contention is that now that the Church has been separated from the State, and being a private institution, in order to justify any act performed prior to 1885 the church record must be produced and the signature of the person who signs the document must be authenticated, because your Honor does not take judicial notice of the signature of a priest of the Roman Catholic Church, as the archives of the churches are not records of the State. In short, my contention is that your Honor does not know who Juan José Lebrón is.

"The judge: The document will be admitted and the question of judicial notice will be taken under advisement."

The argument concedes apparently that the archives of the church antedating the civil registry are "official documents," and section 69 of the Law of Evidence expressly provides that such documents may be proved by production of **the original or "by a copy** certified by the legal keeper thereof." For the purposes of this opinion it may be conceded that the parish priest, since the change of sovereignty, is not a public officer. But it does not follow that he is not the "legal keeper" of the archives which, prior to the establishment of the Civil Registry, served, to all practical intents and purposes, as such registry, and as to such earlier period continue to serve the same purpose. *Montañez* v. *Registrar,* 34 P.R.R. 743.

■ Another proposition is that—

"4th. The court erred in permitting the effort of plaintiffs to prove their civil status and their relationship to María Rivera, María Rivera del Toro and José Rivera by oral evidence."

Here timely objection seems to have been made in each instance. In so far as the individual grantees enumerated in the deed of 1879 are concerned, the error was perhaps harmless. But this can not be said of the other plaintiffs who derive title by inheritance from any one or more of such grantees.

Generally throughout the United States, statutes authorizing official certificates and certified copies are regarded as creating an exception to the hearsay rule but not as establishing a preference. The exceptions are found only in Louisiana, the Philippines and Porto Rico. 2 Wigmore, 1335 and 1336.

Section 320 of the Civil Code leaves little room for construction in so far as the question of preference is concerned. It reads thus:

"The records in the registry shall be evidence of the civil status, and any other evidence can be admitted only when such records have never existed or the books of the registry should have disappeared or when a litigation is instituted before the courts."

Such a preference is not incompatible with section 35 of the Law of Evidence cited by appellants. Section 18 of the law last mentioned, also stressed by appellants, refers not so much to the mode of proof as to the number of witnesses required to establish any given fact. It is but a restatement of the ancient quantitative rule of the common law with its two historic exceptions.

We are not concerned at present with the comparative merits of the continental tradition embodied in section 320, *supra,* and the view obtaining elsewhere in the United States, under statutes of a different origin.

In view of the conclusion reached upon the point last aforesaid, the other questions raised by the appellants need not be discussed.

It remains only to add that we do not mean by anything contained herein to imply that section 320 of the Civil Code has lost none of its original force and effect by reason of subsequent legislation. We have not overlooked the possibilities suggested by the cases of *Camacho* v. *Balasquide,* 19 P.R.R. 564, and *Lebrón* v. *Lebrón,* 31 P.R.R. 842.

Obviously the framers of the Civil Code had in mind entries made immediately upon the happening of the event recorded. With regard to entries so made and, as in the instant case, long before the filing of the suit wherein a tender of the certified copy is made, there would seem to be no reason why the rule prescribed by the Civil Code should not be enforced.

The question as to whether or not the rule should be relaxed, or even reversed in certain conceivable circumstances, or regarded as modified by subsequent legislation in a case plainly not within the reason, policy or spirit of the enactment, is a matter that may better be determined when such a case is presented to our consideration.

The judgment appealed from must be reversed and the case remanded for further proceedings not inconsistent with this opinion.